# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3677 | **DATE** | 11/20/2003 |
| **CASE TITLE** | USA ex rel. Joseph Barnes vs. Kenneth R. Briley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Order. For the reasons stated in this memorandum order, this Court has answered "Yes" the question posed by our Court of Appeals - - whether bad faith on Barnes' part rendered inapplicable the Jones v. Bertrand general rule "that, for statute of limitations purposes, an inmate's petition for habeas relief need not be accompanied by the required filing fee or an in forma pauperis ("IFP") application." And because Barnes has thus run afoul of the Jones- state exception to that general rule, his original Petition for habeas relief was barred by the applicable statute of limitations. This Court therefore reconfirms its long-ago original dismissal of that Petition and dismisses it anew.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 11/21/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**NOV 2 1 2003**

UNITED STATES OF AMERICA             )
ex rel. JOSEPH BARNES,               )
                                     )
                    Petitioner,      )
                                     )
        v.                           )    No.   97 C 3677
                                     )
KENNETH R. BRILEY,                   )
                                     )
                    Respondent.      )

### MEMORANDUM ORDER

It has been almost six years since this Court dismissed, on
grounds of untimeliness, the 28 U.S.C. §2254 ("Section 2254")
petition ("Petition") submitted by Joseph Barnes ("Barnes")
because it found that "there is no way in which Barnes'
application for leave to proceed without payment of the filing
fee--his application for in forma pauperis treatment--can be
regarded as having been presented in good faith" (<u>United States</u>
<u>ex rel. Barnes v. Gilmore</u> ["<u>Barnes I</u>"], 987 F.Supp. 677, 682
(N.D. Ill. 1997)[1]).  Well after some clerical errors at the
appellate level had unfortunately prevented Barnes from getting a
merits determination of that issue, last year our Court of
Appeals reinstated this case and remanded the matter following
Barnes' attempt to file a second habeas petition (<u>Barnes v.</u>
<u>Briley</u>, No. 99-3447, 2002 WL 1489456, at *6 (7th Cir. July 10)).

---

[1]  At that time the respondent Warden was Jerry Gilmore, but
present Warden Kenneth Briley was substituted in his place in
April of this year.

Its unpublished order was explicit in describing the reason for and the purpose of the remand (emphasis in original):

> Since Barnes's first petition was dismissed, we have specifically rejected the legal grounds on which Judge Shadur dismissed Barnes's first petition. In Jones v. Bertrand, 171 F.3d 499 (7th Cir. 1999), we held that, for statute of limitations purposes, an inmate's petition for habeas relief need not be accompanied by the required filing fee or an in forma pauperis ("IFP") application, so long as one or the other is sent within a reasonable time and there is no evidence of bad faith on petitioner's part. In Barnes's case, in April, 1997, he filed an IFP application with his petition for habeas relief, but the district court found that his request for IFP status could not have been filed in good faith because he had enough money in his account to pay the $5.00 filing fee. He paid the $5.00 fee in July, 1997. See United States ex rel. Barnes v. Gilmore, 987 F.Supp. at 682 (N.D. Ill. 1997). However, Judge Shadur did not have the benefit of our decision in Jones v. Bertrand when rendering his decision. Thus, we are unsure whether his reference to Barnes's lack of "good faith" is equivalent to "bad faith" within the meaning of Jones v. Bertrand. Therefore, we hereby vacate that dismissal and remand for further consideration in light of Jones v. Bertrand. If Barnes can establish that he has met the requirements of Jones, the district court should then consider the merits of his petition for habeas corpus relief.

Because Jones did not itself define "bad faith," and because it appeared that the exploration of that and perhaps other issues could potentially implicate complex legal questions, this Court sought to assure that Barnes would have the benefit of highly qualified counsel. That has unquestionably been done: Dean Lauren Robel of the Indiana University School of Law is representing Barnes on a pro bono publico basis. In turn the Illinois Attorney General has assigned the case to Assistant

Attorney General Domenica Osterberger, who has consistently displayed first-rate lawyering in whatever matters she has handled before this Court. This Court acknowledges its indebtedness to both counsel for having so well illuminated the issues for decision.

At the same time, the absence of an express definition of "bad faith" in the Jones opinion also suggested to this Court the possibility that a substantive resolution of Barnes' habeas claims might perhaps prove the easier course. In that respect, attorney Osterberger had urged the procedural default of all those claims in addition to having argued the Petition's asserted untimeliness. Both counsel have accordingly addressed all of the issues with commendable thoroughness, but attorney Osterberger's recent return to the timeliness issue--and the parties' subsequent cross-submissions on that subject--have proved that to be the most appropriate route for decision after all.

Before this opinion turns to that subject, it is necessary to dispel the misapprehension evidenced by Barnes' counsel as to the nature of the relevant inquiry. At page 2 of her most recent submission ("Barnes R. Mem.") counsel urges that "the proper standard for assessing bad faith in the filing of a pauper petition is found in cases interpreting 28 U.S.C. §1915, and those cases are uniform in interpreting 'bad faith' as substantive frivolity in the underlying legal action." But

3

although that accurately states the standard for evaluating litigants' substantive claims[2]--in a habeas case, the grounds advanced in seeking relief--that obviously does not apply to the Court of Appeals' identification of the question as being whether Barnes' "request for IFP status" (and not the substantive Petition) was filed in "bad faith," as potentially distinguished from this Court's original determination that it was not filed in "good faith." On then to that subject.

In sum, respondent Warden Briley ("Respondent," acting through attorney Osterberger) has the better of the dispute by a substantial margin. Because Respondent's just-filed Reply Memorandum ("Briley R. Mem.") has so well presented the arguments that call for dismissal, this opinion will not dwell on the matter at undue length, instead referring to that submission where appropriate.

To begin with, Respondent correctly urges that--as is the norm with any remand--the boundaries for this District Court are marked out by law of the case principles (see, e.g., such cases as Roboserve, Inc. v. Kato Kagaku Co., 121 F.3d 1027, 1031 (7th Cir. 1997) and other Seventh Circuit cases cited both there and at Briley R. Mem. 5). And that being so, Barnes cannot now challenge whether the fact and the circumstances of his having

---

[2]    In that respect Barnes' counsel properly cites to Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000).

4

sought in forma pauperis status are relevant to the question of his Petition's timeliness, for the earlier-quoted portion of the Court of Appeals' unpublished order has expressly directed this Court to apply the holding of the Jones decision that had come down after this Court's initial dismissal of the petition. And Barnes' current effort to label that directive as merely dictum is flatly belied by the Court of Appeals' specific designation of the Jones holding as the appropriate yardstick--particularly because of the emphasis that the Court placed on the requirement that "there is no evidence of bad faith on petitioner's part."

In response to that directive from the Court of Appeals, it must be concluded that the circumstances here amply justify a determination that Barnes' conduct did evince such bad faith in the ordinary understanding of that concept. And to see why that is so, it is necessary to look only at the earliest part of the tangled history of this litigation.

Barnes launched his effort to obtain Section 2254 relief by tendering his papers to the prison authorities at Pontiac Correctional Center ("Pontiac") in the latter part of April 1997--just a few days before the expiration of the one-year limitation period that began after the effective date of the legislation commonly referred to as AEDPA. In addition to preparing his Section 2254 Complaint itself, Barnes contemporaneously filled out an AO 240 form of Application To

Proceed Without Prepayment of Fees ("Application"). As the AO 240 form (attached Ex. 1[3]) shows, the applicant for in forma pauperis treatment such as Barnes represents as the basis for seeking to proceed without prepayment of the filing fee "that I am unable to pay the costs of these proceedings," and that representation-- like everything else in the Application--is "declare[d] under penalty of perjury."

But Barnes' representation as to his inability to pay was simply false--instead, the printout from Pontiac that accompanied the Application showing the status of his prison trust fund account (see 28 U.S.C. §1915(a)(2)) confirmed that there was nearly $100 (more precisely $98.80) in that account, obviously far more than was needed to pay the small $5 filing fee. But more importantly for present purposes, Barnes _knew_ that his representation was false. Shortly after this Court issued its _Barnes I_ opinion dismissing the Petition for untimeliness, Barnes filed a self-prepared motion to alter or amend the judgment of

---

[3] Unfortunately one additional aspect of the procedurally snakebitten history of this lawsuit is that in the course of assemblage of the partial record on appeal and the reassemblage of the rest of the District Court record, some of the original court documents have been mislaid--at least this Court's thorough search of the record documents (including the appellate record that has been returned to the District Court) has not uncovered them. But there is no dispute about the facts set out in this opinion or about the contents of the unlocated documents, and hence Ex. 1 is an accurate depiction of the form of Application that Barnes completed and submitted not once but twice (as the later narration reflects).

6

dismissal in which he "explained" his having filed the Application that he knew to be untruthful--and to avoid any possibility of mischaracterizing the nature of that explanation, this Court attaches a photocopy of Barnes' lengthy paragraph 7 of that motion as Ex. 2.

This Court just as promptly rejected the legitimacy of that explanation in its January 22, 1998 memorandum opinion and order ("<u>Barnes II</u>," 1998 WL 30705, at *1 (N.D. Ill. Jan. 22)[4]):

> This Court has reviewed both of Barnes' most recent submissions with care. In part he complains about the hardships that he assertedly faced in meeting the April 23, 1997 deadline for filing his Petition because he had been in disciplinary segregation since December 1996. But the fact is that he <u>did</u> manage to meet that April 23 deadline despite any impediments created by his custodial status. So what the matter really boils down to is Barnes' further claim (at pages 2 and 3 of his most recent Motion To Alter or Amend) that he was so intent on getting the Petition itself filed on a timely basis that he should be excused from his failure to have asked for payment, at the same time, of the extremely modest $5 filing fee out of the then-existing $98 balance in his trust fund account.[2]
>
> _____
>
> [2] Barnes' current reference to the traumatic experience of getting his Petition completed and delivered to the prison authorities just under the wire is entirely silent as to why he had the presence of

_____

[4] In the clouded crystal ball category, that opinion began with this sentence:

> This seems likely (though not certain) to be this Court's final word in disposition of the 28 U.S.C. §2254 habeas corpus petition ("Petition") brought by Joseph Barnes ("Barnes") against Warden Jerry Gilmore ("Gilmore").

7

mind to put in a written request for payment of the
mailing fee for the Petition at the same time but he
somehow lacked the capability to lodge a simultaneous
request for a $5 check to accompany the Petition as the
filing fee.

And to the same effect, Barnes II at *1 went on to quote this
portion of Barnes I, 987 F.Supp. at 682 that had explained this
Court's original finding as to Barnes' lack of good faith:

It is highly relevant that Barnes' November 17, 1997
filing (his Response to Respondent's Motion To Dismiss
Petitioner's Petition for Habeas Corpus Relief)
includes as its Ex. A his April 22, 1997 Request for
Payment out of his account, in which he requested and
authorized the payment of postage for mailing his
Petition to this District Court (a request that was
stamped "Paid Apr. 23, 1997"). Nothing whatever
prevented Barnes from making an identical timely
request for the payment of the $5 filing fee--and yet
it was not until mid-July 1997, after this Court (which
was not then focusing on the limitations issues dealt
with here) had twice denied Barnes' efforts to obtain
in forma pauperis treatment (both because it then
appeared that no application to that effect had been
received and because it seemed almost certain that
Barnes could readily manage payment of the very small
fee), that he actually paid the $5 filing fee.

Before this Court turns to the significance of Barnes' just-
described knowingly false statement in terms of the mandated "bad
faith" analysis, it is important to point out that Barnes
actually compounded that falsity by a repetition of the same
offense. And to that end this opinion returns to the sequence of
events following Barnes' original filing.

In another of the inexplicable mishaps that have marked the
course of this litigation, the Pontiac prison authorities managed
to misplace Barnes' original Application, so that the only thing

8

transmitted to the District Court was the Petition itself, which was immediately assigned to this Court's calendar by random assignment. And as soon as a copy of the Petition was delivered to this Court's chambers, it looked into the question whether Barnes' failure to pay a filing fee had been explained by an Application (this Court then had no way of knowing, of course, whether Barnes had any money at all in his trust fund account--a situation encountered with some degree of frequency in dealing with prisoner litigants, who often overdraw their accounts by incurring expenses related to litigation that they are conducting). When it turned out that no Application was in the court file, this Court promptly issued its May 27, 1997 memorandum order (attached Ex. 3) that apprised Barnes of the $5 filing fee, sent him copies of the court-provided form of Application and told him to provide either the $5 fee or a completed Application during the next half month.

But what Barnes did by the June 12 date specified in the May 27 order was not to pay the fee, but instead to file a false statement once again--an Application seeking in forma pauperis status (although that is one of the filings not now locatable in the court file--see n. 2--its submission is confirmed by docket entry 6 in attached Ex. 4, a photocopy of the first four pages of the case docket, which shows that Application as having been received by the Clerk of Court on June 10, two days before the

June 12 due date set by the May 27 memorandum order). So despite

his ongoing knowledge of the need to pay the modest $5 filing

fee, Barnes once again filed a knowingly false statement under

penalty of perjury--and this time without the semblance of even

the makeweight excuse that he had proffered the first time around

on the basis of the asserted time pressures that then concerned

him.[5]

On that score the Supreme Court said this fully eight

decades ago in discussing the need for a habeas petitioner to

swear to his own in forma pauperis affidavit (Pothier v. Rodman,

261 U.S. 307, 309 (1923)):

> Under the statute the affidavit as to the poverty of
> the applicant is to be made by himself and not by
> another, even his counsel. A supporting affidavit may
> properly be made by the counsel, but the importance
> that he who is seeking the privilege accorded by the
> statute should be required to expose himself to the
> pains of perjury in a case of bad faith is plain.

As small as the amount involved here may be, there is no question

that Barnes--with full knowledge and wilfully--filed a knowingly

false AO 240 statement under the penalty of perjury on two

---

[5] What has been said to this point forms the predicate for
the bad faith analysis that follows in the text. But as an
informational matter, this Court thereafter issued a June 30,
1997 memorandum order (attached Ex. 5) that set out Barnes'
failure to pay and that--for the obvious reason stated
there--denied his newest Application. And finally, even though
that later memorandum order had given Barnes until July 12 as an
extended date for the $5 payment, for some inexplicable reason
Barnes finally did so only later--on July 22, as docket entry 12
shows (see Ex. 4).

occasions, in the course of which he also violated the dictates of this Court's memorandum orders that had been intended to assist him by identifying his obligation (one that it turns out he had known about from the outset).

That amounts in this Court's view to Barnes' having engaged in clearly bad faith filings, a holding that deals specifically with the subject matter of the remand order.[6]  But because Barnes able counsel also urges that if he were able to establish his actual innocence (something that has not taken place, it should be added), that subject will be explored briefly.

In that respect this Court agrees with the Eighth Circuit's decision in <u>Flanders v. Graves</u>, 299 F.3d 974, 977 (8th Cir. 2002), which looked at the actual innocence exception to the doctrine of procedural default in habeas cases but held that no such approach was justified as an exception to the limitations period fixed by AEDPA:

> These doctrines, allowing the use of actual innocence for certain procedural purposes, are now partially codified in AEDPA.  28 U.S.C. §2244(b)(2)(B)(ii). Petitioner argues that these doctrines, which excuse some types of procedural defaults, should likewise excuse his failure to file his petition within the period fixed by Act of Congress, a failure which he characterizes as a similar "procedural default."  We cannot agree with this assertion, at least as a broad concept.  We are dealing here with a statute.  It is our duty to apply statutes as written. The statute

---

[6]  That obviates the need to examine the legal sufficiency or insufficiency of Barnes' underlying claims, as to all of which Respondent has argued the bar of procedural default.

> fixes a one-year period of limitations, and says
> nothing about actual innocence, even though other parts
> of AEDPA, enacted at the same time, do refer to this
> doctrine.  Compare 28 U.S.C. §2244(d)(1), with 28
> U.S.C. §2244(b)(2)(B)(ii). It is not our place to
> engraft an additional judge-made exception onto
> congressional language that is clear on its face.

Although Barnes' counsel quarrels with Flanders, language in two decisions by our own Court of Appeals (Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000) and Brooks v. Walls, 279 F.3d 518, 525 (7th Cir. 2002))--though it has not had occasion to speak directly to the issue--reflects a parallel approach to the Flanders analysis by also declining to recognize judicially created exceptions to the AEDPA limitations period, given the statute's explicit identification of exceptions that Congress found appropriate.

Finally, this Court has given full consideration to the constitutional arguments advanced on Barnes' behalf in an effort to justify an actual innocence exception to the statutory time bar, and it finds those arguments wanting.  At Barnes R. Mem. 8 his counsel candidly acknowledges "that AEDPA's statute of limitations has withstood constitutional challenge in contexts that do not involve claims of innocence" (listing as examples Green v. White, 223 F.3d 1001, 1003-04 (9th Cir. 2000) and Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)) and also "that innocence per se is not a constitutional claim" (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)).  This Court is

unprepared to accord some sort of superconstitutional status for Suspension Clause purposes to a contention of Barnes' "actual innocence"--see not only <u>Herrera</u> but also our Court of Appeals' decision in <u>Freeman v. Page</u>, 208 F.3d 572, 576 (7th Cir. 2000).

### Conclusion

For the reasons stated in this memorandum opinion and order, this Court has answered with a "Yes" the question posed by our Court of Appeals--whether bad faith on Barnes' part rendered inapplicable the <u>Jones v. Bertrand</u> general rule "that, for statute of limitations purposes, an inmate's petition for habeas relief need not be accompanied by the required filing fee or an in forma pauperis ("IFP") application." And because Barnes has thus run afoul of the <u>Jones</u>-stated exception to that general rule, his original Petition for habeas relief was barred by the applicable statute of limitations. This Court therefore reconfirms its long-ago original dismissal of that Petition and dismisses it anew.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 20, 2003

13

# UNITED STATES DISTRICT COURT

**District of** _____

|  |  |
|---|---|
| Plaintiff | **APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT** |
| V. | |
| Defendant | CASE NUMBER: |

I, _____ declare that I am the (check appropriate box)

☐ petitioner/plaintiff/movant     ☐ other _____

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?     ☐ Yes     ☐ No     (If "No," go to Part 2)

   If "Yes," state the place of your incarceration _____

   Are you employed at the institution? _____ Do you receive any payment from the institution? _____

   Attach a ledger sheet from the institution(s) of your incarceration showing at least the past **six** months' transactions.

2. Are you currently employed?     ☐ Yes     ☐ No

   a. If the answer is "Yes," state the amount of your take-home salary or wages and pay period and give the name and address of your employer.


   b. If the answer is "No," state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.


3. In the past 12 twelve months have you received any money from any of the following sources?

   | | | | |
   |---|---|---|---|
   | a. | Business, profession or other self-employment | ☐ Yes | ☐ No |
   | b. | Rent payments, interest or dividends | ☐ Yes | ☐ No |
   | c. | Pensions, annuities or life insurance payments | ☐ Yes | ☐ No |
   | d. | Disability or workers compensation payments | ☐ Yes | ☐ No |
   | e. | Gifts or inheritances | ☐ Yes | ☐ No |
   | f. | Any other sources | ☐ Yes | ☐ No |

   If the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive.

EXHIBIT 1

4. Do you have **any** cash or checking or savings accounts?　　☐ Yes　　　☐ No

   If "Yes," state the total amount. _____

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value?　　☐ Yes　　　☐ No

   If "Yes," describe the property and state its value.

6. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

I declare under penalty of perjury that the above information is true and correct.

_____　　　_____
Date　　　　　　　　　　　　　　　　　　　Signature of Applicant

**NOTICE TO PRISONER:** A Prisoner seeking to proceed IFP shall submit an affidavit stating all assets. In addition, a prisoner must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

~~Had petitioner not been hel under such confinement wi such conditions in~~
place, he could done the needed research for preparation of his petition for
timely submission to the Court, and, if not in segregation, he could have got
an immediate pass to the prison Trust Fund Office to arrange immediate prepar-
ation of a check for payment of filing fees to be included and/or enclosed in
the same envelope with his habeas petition. However, petitioner's segregatic
confinement status impeded and precluded such, and, therefore, petitioner
should be allowed the one year grace period announced under Section 2244(d)(1)
(B), at least in part if not in full, and petitioner's honest efforts to over-
come the impediments placed on him by the State, by seeking the assistance of
another prisoner (petitioner's efforts), should not be used to penalize him
instead. Had petitioner not sought out the assistance of another prisoner to
try to overcome the State created unconstitutional impediment, petitioner
would have had one year from his scheduled January 9, 1998 segregation release
date on which to file his habeas petition. No prejudice can result to Respond-
ents from applying Subsection (1)(B) to "petitioner's" filing time, at least
for the time period between December 1996 through April 23, 1997, a four (4)
month period that "Respondents" impeded petitioner's access, that would
~~absorb the period it took to get the check for payment of fees to the court.~~

    ¶. Secondly, as to the "payment of filing fees" aspect, petitioner
understands what this Court is saying, that petitioner could have also submit-
ted to prison officials a voucher for the deduction of filing fees from his
account. However, (a) the fact of the matter was that petitioner's attention
and concern was on getting the petition for habeas relief (and i.f.p.) to the
court as quickly as he possibly could under the circumstances and petitioner's
familiarity with the slow procedures employed by the Respondent's Trust Fund
Office for preparing checks and/or money orders for sending out of the prison
only meant to petitioner that his petition would not be mailed out for nearly
a month or more, and since petitioner, in fact, did not have any ready cash
at his disposal to enclose in the envelope with his habeas petition for filing
fees, petitioner submitted the i.f.p. petition, in that, as a matter of "fact",
"petitioner" did not "have" the five dollars at his disposal at that moment,

                    EXHIBIT 2        3

(b). petitioner was not try[ ] to get around paying $5.( ) in sending in the i.f.p. petition, he was ju[ ] trying to find a way to satisfy the filing fee requirement and, to his way of thinking, there was no other way to do it without having the $5.00 or a check therefor in his hand to enclose in the mail with his petition, except to send in the i.f.p. petition. Petitioner would not have included a copy of the trust fund ledger clearly showing that he had $98.00 "in his prison trust fund account" if he was trying to avoid paying the $5.00. Petitioner was only trying to get his petition "filed". Also under the Prisoner Litigation Act of 1996 ( 28 U.S.C. § 1997 ) district courts have the authority to grant a prisoner leave to proceed in forma pauperis, but still bill the prisoner for cost of filing fees, which, in light of petitioner's disclosure of having the $98.00 (though not then available to him) and the fact that petitioner is fighting a life sentence with issues he definately believes to be meritorious, petitioner would not have had any qualms about paying the $5.00 or being billed for it, as he has shown by paying the fees upon this court's order, and (c) though this court is saying that "if petitioner had made the request of the prison Trust Office for the $5.00 for 'filing fees on April 22, 1997 , it would have been tantamount to paying the filing fees" , this is language new to petitioner. The advice that petitioner had was that he had to have his legal materials, at least, "in the mail" before the expiration date for filing. Petitioner have never read <u>Houston v Iack</u>, and was acting solely off information from the assisting prisoner , and did not see a request for a check or money order, as constituting or being tantamount to "a mailing" as being equated by this court, <u>now</u>. And, as stated, petitioner saw a request for the check to be enclosed as only having the effect of making the filing a month late, and more controversy would have been raised about that. Petitioner did not have access to case laws to research the rational being advanced by this Court now, that the "fee " would have been satisfied by such a "request" in spite of no actual mailing or it even being in the prison's "mailing" division's hands or control for mailing before the expiration date, due to the administrative policies and practices of not allowing segregation prisoners access to legal materials for research for petitioner to have made the interpretation, or stretch thereof, being made here by this court.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )
ex rel. JOSEPH BARNES,            )
                                  )
              Petitioner,         )
                                  )
    v.                            )    No. 97 C 3677
                                  )
JERRY D. GILMORE,                 )
                                  )
              Respondent.         )

## MEMORANDUM ORDER

Joseph Barnes ("Barnes") has tendered a 28 U.S.C. §2254 ("Section 2254") Petition for Writ of Habeas Corpus, but without any accompanying payment of the filing fee or Application To Proceed In Forma Pauperis ("Application"). Indeed, in the latter respect Barnes has submitted a Motion for Appointment of Counsel ("Motion"), which in part inaccurately represents:

> I have attached an original Application to Proceed In Forma Pauperis in the proceeding detailing my financial status.

Because the filing fee for any Section 2254 petition is the modest sum of $5, it would seem most likely that Barnes could now provide that amount to permit his Petition to be filed. But if this Court is to consider Barnes' added request that he be provided with counsel to represent him pro bono publico, he will have to provide the necessary information on the now-missing Application form. It does appear from this Court's threshold review of the bulky Petition (which includes Barnes' 55-page handwritten statement of claim) that it presents matters that may require review, but this Court cannot address them unless and until Barnes deals with the legal requirements for accepting a

EXHIBIT 3

Section 2254 petition for filing. Indeed, the very nature and content of Barnes' self-prepared submission strongly suggest that the assistance of a lawyer would serve this Court (as well as Barnes) by providing a sharper focus for Barnes' claims.

Accordingly Barnes is being sent, together with a copy of this memorandum order, forms of Application to be completed. If he has not provided the required $5 filing fee or a completed Application or both on or before June 12, 1997, this Court will deny the Petition for that reason. If he does comply with either or both of those conditions, this Court will act on Barnes' motion and take such further action as is then appropriate.

Milton I. Shadur
Senior United States District Judge

Date: May 27, 1997

PC/CHASER Docket as of 11/7,/03 9:30 pm   Printed 11/18/03       Page 1
Proceedings include all events.                                 REOPEN
1:97cv3677 Barnes v. Gilmore, et al                                    DENLOW

                                                        REOPEN DENLOW

                        U.S. District Court
              Northern District of Illinois (Chicago)

               CIVIL DOCKET FOR CASE #: 97-CV-3677

Barnes v. Gilmore, et al                         Filed: 07/22/97
Assigned to: Hon. Milton I. Shadur
Demand: $0,000                          Nature of Suit:  530
Lead Docket: None                       Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

JOSEPH BARNES, ex rel              Joseph Barnes
       petitioner                  A-25050
                                   [NTC] [PRO SE]
                                   Stateville - STV
                                   Stateville Correctional Center
                                   P.O. Box 112
                                   Joliet, IL 60434

                                   Lauren K Robel
                                   [COR LD NTC A]
                                   Indiana University
                                   School of Law - Bloomington
                                   211 Indiana Avenue
                                   Bloomington, IN 47405
                                   (812)855-4140

    v.

JERRY D GILMORE                    Darryl Belmonte Simko
       respondent                    [term  12/05/02]
    [term  12/05/02]               [COR LD NTC A]
                                   Illinois Attorney General's
                                   Office
                                   100 West Randolph Street
                                   12th Floor
                                   Chicago, IL 60601
                                   (312) 814-2235

JAMES E RYAN                       Chief of Criminal Appeals
       respondent                  [NTC]
                                   Illinois Attorney General's
                                   Office
                                   100 West Randolph Street
                                   12th Floor
                                   Chicago, IL 60601

Exhibit 4

PC/CHASER Docket as of 1●7,/03 9:30 pm  Printed 11/18●    Page 2
Proceedings include all events.                          REOPEN
1:97cv3677 Barnes v. Gilmore, et al                              DENLOW

(312) 814-2235

KENNETH R BRILEY
    respondent

KENNETH R BRILEY
    respondent

PG/CHASER Docket as of 1█7,/03 9:30 pm   Printed 11/18█8        Page 3
Proceedings include all events.                                  REOPEN
1:97cv3677 Barnes v. Gilmore, et al                                      DENLOW

5/15/97   3       MOTION by petitioner for appointment of counsel. (vj)
                  [Entry date 05/22/97]

5/19/97   1       PETITION FOR WRIT OF HABEAS CORPUS. (vj)
                  [Entry date 05/22/97]

5/19/97   2       CIVIL cover sheet. (vj) [Entry date 05/22/97]

5/22/97   --      MAILED copy of petition for writ of habeas corpus to Arleen
                  Anderson via certified mail P 863 997 867. (vj)
                  [Entry date 05/22/97]

5/22/97   --      FORWARDED CASE FILE to Prisoner Correspondence. (vj)
                  [Entry date 05/22/97]

5/27/97   4       MEMORANDUM ORDER. (vj) [Entry date 05/29/97]

5/27/97   5       MINUTE ORDER of 5/27/97 by Hon. Milton I. Shadur: Enter
                  memorandum order. The clerk is directed to mail to Barnes,
                  an application to proceed in forma pauperis along with this
                  memorandum order. If Barnes has not provided the required
                  $5 filing fee or a completed application or both on or
                  before 6/12/97, this court will deny the petition for that
                  reason. If he does comply with either or both of those
                  conditions, this court will act on Barnes' motion and take
                  such further action as is then appropriate. Mailed notice
                  (vj) [Entry date 05/29/97]

6/10/97   6       APPLICATION by petitioner to proceed in forma pauperis
                  (Attachments). (vj) [Entry date 06/20/97]

6/10/97   7       EXHIBITS by petitioner. (Temporarily unavailable for
                  docketing) (vj) [Entry date 06/20/97]

6/27/97   10      LETTER from petitioner to court dated 6/23/97. (vj)
                  [Entry date 07/03/97]

6/27/97   11      AMENDED habeas corpus petition by petitioner. (vj)
                  [Entry date 07/03/97]

6/30/97   8       MEMORANDUM ORDER. (vj) [Entry date 07/01/97]

6/30/97   9       MINUTE ORDER of 6/30/97 by Hon. Milton I. Shadur: Enter
                  memorandum order. Barnes' motion to proceed without payment
                  of the filing fee denied [6-1] as is his earlier motion for
                  appointment of counsel [3-1]. If Barnes continues in his
                  nonpayment of the required $5 filing fee until 7/15/97,
                  this court will be constrained to dismiss his petition, but
                  if (as should be expected) the filing fee is paid by that
                  date, this court will promptly reconsider and will act upon
                  Barnes' earlier motion to obtain the appointment of
                  counsel. Mailed notice (vj) [Entry date 07/01/97]

PC/CHASER Docket as of 11/7,/03 9:30 pm  Printed 11/18    Page 4
Proceedings include all events.                              REOPEN
1:97cv3677 Barnes v. Gilmore, et al                          DENLOW

7/22/97   12    RECEIPT regarding payment of filing in the amount of $ 5.00
                receipt # 496925. (vj) [Entry date 07/25/97]

7/22/97   --    RECEIPT regarding payment of filing fee paid; on 7/22/97 in
                the amount of $ 496925, receipt # 5.00. (vj)
                [Entry date 07/25/97]

7/28/97   13    MINUTE ORDER of 7/28/97 by Hon. Milton I. Shadur: In
                accordance with Rule 4 of the Rules Governing Section 2254
                cases in the United States District Courts, the Illinois
                Attorney General is ordered to file an answer or other
                pleading to the petition in this case on or before 9/12/97.
                Mailed notice (vj) [Entry date 07/29/97]

8/12/97   14    ATTORNEY APPEARANCE for respondent Jerry D Gilmore by
                Darryl Belmonte Simko. (vj) [Entry date 08/13/97]

9/12/97   15    MOTION by respondents for extension of time to answer the
                petition for writ of habeas corpus; Notice of motion. (vj)
                [Entry date 09/19/97]

9/18/97   16    MINUTE ORDER of 9/18/97 by Hon. Milton I. Shadur: Motion
                granted [15-1]. Respondent has to and including 10/24/97 in
                which to file an answer to the petition for habeas corpus.
                Mailed notice (vj) [Entry date 09/19/97]

10/24/97  17    MOTION by respondents to dismiss petition for habeas
                corpus (Exhibits); Notice of motion (ip)
                [Entry date 11/05/97]

11/4/97   18    MEMORANDUM, OPINION, AND ORDER (ip) [Entry date 11/05/97]

11/4/97   19    MINUTE ORDER of 11/4/97  by Hon. Milton I. Shadur:
                Respondents' motion to dismiss petition for habeas corpus
                [17-1] is entered and continued. Enter memorandum opinion
                and order. Accordingly, on or before 11/24/97, Barnes is
                ordered to file in this court's chambers either an
                acknowledgment that he did not deliver the petition to the
                Pontiac prison authorities by 4/23/97 or, if he claims that
                he did, suitable evidence of such delivery. If Barnes has
                not submitted a timely filing in either of those respects
                on or before 11/24/9, this court will grant the motion to
                dismiss his petition. Mailed notice (ip)
                [Entry date 11/05/97]

11/17/97  20    RESPONSE by petitioner to respondent's motion to dismiss
                petitioner's petition for habeas corpus relief [17-1]
                (Exhibits) (ip) [Entry date 11/24/97]

11/26/97  21    MEMORANDUM ORDER (ip) [Entry date 11/26/97]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
ex rel. JOSEPH BARNES, )
)
             Petitioner, )
)
  v. )    No.  97 C 3677
)
JERRY D. GILMORE, )
)
             Respondent. )

## MEMORANDUM ORDER

This Court's brief May 27, 1997 memorandum order explained
to 28 U.S.C. §2254 ("Section 2254") petitioner Joseph Barnes
("Barnes") that in light of the minimal $5 filing fee applicable
to Section 2254 actions, he would be given until June 12 to pay
that amount (thus mooting his Application To Proceed In Forma
Pauperis ("Application"))--or if he was indeed too poor to pay
even the $5 figure, he would have to file a properly-prepared
Application demonstrating that.  Although the May 27 order was
intended to be very plain on that score, Barnes has still failed
to pay the $5, even though he <u>has</u> submitted a completed
Application form reflecting that he has nearly $100 in his trust
fund account at Pontiac Correctional Center.

Accordingly Barnes' motion to proceed without payment of the
filing fee is denied, as is his earlier Motion for Appointment of

EXHIBIT 5

Counsel ("Motion").  If Barnes continues in his non payment of the
required $5 filing fee until July 15, 1997, this Court will be
constrained to dismiss his Petition--but if (as should be
expected) the filing fee is paid by that date, this Court will
promptly reconsider and will act upon Barnes' earlier motion to
obtain the appointment of counsel to represent him pro bono
publico (as this Court has already indicated it would do in its
May 27 order).

Milton I. Shadur
Senior United States District Judge

Date:  June 30, 1997

2